The evidence in the record compels the conclusion that Mr. Davtyan has a well-founded fear of future persecution in Armenia. Mr. Davtyan's testimony, which must be accepted as true for purposes of evaluating his petition, demonstrates both past persecution and, independently, a well-founded fear of future persecution. In 1996, shortly after Mr. Davtyan joined the Voice of Freedom political party, he was arrested on account of his political activity. Thereafter, he was beaten for three days, detained for a month, and deprived of food and water during the first three days of the beatings. As a result of this, he required medical treatment. He was admitted to a hospital for three days, during which time he was treated for injuries to his head and to his leg. Mr. Davtyan testified that he continues to feel pain in his leg as a result of these beatings to this day. Well, there's no question that was a very disagreeable episode, to say the least. But what do you say about the three years that followed, from 1996 to 1998? What do you get out of the record as to persecution during that period? Well, Your Honor, the record shows that even after this incident, authorities continued to harass Mr. Davtyan. But there's nothing specific in the record about this harassment. That's kind of a conclusory statement. The evidence does show that they observed him and followed him in public. They harassed him at his mechanic shop, going so far as to shut down his mechanic shop for a time. Well, he shut it down for a month, didn't he? Yes, Your Honor. It doesn't indicate... Did they shut it down for him? The record indicates that they shut down the mechanic shop. And then it reopened. Then it reopened. Yes, Your Honor. And he continued to operate it until he decided to sell it or close it. It's unclear exactly why he shut down the mechanic shop. There was a back and forth about that with the government and in the reply brief. It appears that Mr. Davtyan may have shut down his mechanic shop for several reasons, possibly because he was planning on growing the political party and becoming more active in the political party. He also says that there were business-related issues for shutting down the shop. But then he goes on to state that the economy was not going bad, there's no bankruptcy in Armenia, and the shop was doing fine. So it's unclear why he shut down the mechanic shop. But what is clear is that in 1999, things got much worse for Mr. Davtyan. The leader of his political party was assassinated in March of that year. Then his fellow party members organized a rally to protest that the police descended upon them, attacked the demonstrators, arrested several demonstrators, and in fact struck Mr. Davtyan with a baton and attempted to arrest him. And it was only after this incident that he hid out for two weeks and ultimately fled Armenia. You couldn't say the record supports the conclusion that he was singled out for beating during that demonstration. Well, the record does indicate that authorities attempted to arrest him at that demonstration and in fact attempted, continued to be interested in him when he hid out for two weeks. And in fact, the testimony shows that even after Mr. Davtyan fled Armenia, authorities had a continued interest in Mr. Davtyan. They inquired into his whereabouts with his parents, and that was, according to his testimony, one week before the immigration hearing. In addition, Your Honors, there's testimony in the record that not only was Mr. Davtyan targeted by Armenian authorities, but his fellow party members, those who were similarly situated to him, were persecuted in Armenia. As I mentioned, the leader of his political party was assassinated and his fellow party members were arrested and tortured. Under the law of the circuit, this strengthens Mr. Davtyan's claims. Now the BIA's decision denying Mr. Davtyan's applications was wholly erroneous. The BIA failed to consider all the evidence in the record, did not consider the fact that Mr. Davtyan continued to suffer harassment in Armenia after the 1996 beatings in detention, did not consider authorities' continued interest in Mr. Davtyan even after he fled Armenia, and did not consider the harm suffered by his similarly situated fellow party members. Furthermore, the BIA erred in relying on the fact that Mr. Davtyan's family members continued to reside safely in Armenia. This Court has stated that the fact that... Excuse me, Your Honor? What is the evidence of their continued interest in him after he fled? Is that contact with his parents? Yes, he testifies that they harassed his parents and that they inquired into his whereabouts with his parents. As I was saying, Your Honors, under the law of the circuit, the fact that fellow family members continued to reside safely in Armenia does not negate an asylum claim unless there's a showing that those family members are similarly situated to the petitioner. Here, no such showing was made, and in fact, looking at those who were similarly situated to Mr. Davtyan, his fellow party members, Mr. Davtyan's claim is strengthened. Well, this case involves a person who was obviously an opponent of the regime of Armenia. Correct, Your Honor. He was in the political opposition. Correct, Your Honor. And you could expect that they would give him something of a hard time. That's normal. At what point does political opposition rise, or dealing... The regime's dealing with political opposition rise to persecution. It seems to me that what you're describing is what you might expect a government like the Armenian government to do to control the opposition. It's unpleasant, and we wouldn't approve of it, but is it really persecution? What makes it persecution? Well, it's persecution, Your Honor, when the repression of the political party entails three days of beatings, denying food and water to Mr. Davtyan and detaining him for months. That was the consequence of his being caught painting graffiti on the wall. That was the consequence of him being arrested for his political speech. The record does not indicate, and the BIA did not rely on the fact that he was arrested based on anything other than political speech. Furthermore... On the wall, right? Painting on the wall. Well, he states posting messages on the wall. It's unclear from the testament exactly what he was doing. He does testify that it was common in Armenia to post messages on walls, and that people commonly did it. He states that he was arrested because of his political activities. He says during the interrogation, he was making... In fact, he testifies as to a political statement during the interrogation, and authorities continued to beat him during that time. And if he could be... If the record showed that others would be arrested for writing graffiti on private property, do we have precedent that says that a disproportionate treatment of him by beating him is persecution? Well, this court does have cases describing mixed motives. The fact that there is a neutral law that is applied in a discriminatory manner towards a protected class, and applied in a manner that entails persecution of an individual, does not insulate that activity. We cited in the brief the Hoke case, where as the fact that there may be a neutral law does not insulate persecution, where it's shown that at least part of the motivation was persecution on a protected ground. Do you want to reserve a bit for a bottle? You have about a minute and 30 left. I will, Your Honor. I just want to, in sum, Your Honor, state that no reasonable find could conclude that what happened to Mr. Dovchian was not persecution. It should be remembered that Mr. Dovchian fled the country in 1999, only after authorities attempted to arrest him a second time. Mr. Dovchian had already experienced an arrest in 1996, and persecution during that arrest. Therefore, it was entirely reasonable for him to believe that he was in danger, which he states in the record, and to flee Armenia at that time. Accordingly, the petition should be granted. If the Court has no further questions, I'll reserve the balance of my time. Thank you. Good morning, Your Honors. May it please the Court. I am Assistant United States Attorney David Pincus, and I represent the Respondent, Attorney General Alberto Gonzalez. This is the classic case of a person who decided to emigrate for economic reasons unrelated to any alleged persecution based on enumerated grounds. The key fact that distinguishes this case from the cases cited by Mr. Estrada … Where do you find that in the BIA opinion? Excuse me, Your Honor? Where do you find that conclusion in the BIA opinion? Well, the BIA opinion is somewhat brief, Your Honor, but if you take the record as a whole and the … But we review the BIA opinion. I agree, but I believe … The BIA did not make that finding, did it? I think the BIA said that the record did not compel a finding that this person … Well, I could look at the … very quickly. It's rather conclusory, but I think it's there. Well, I think what the BIA said is that they didn't believe that this … the incidents formed the basis of … a sufficient basis for finding a persecution. They also said that, Your Honor, that the record didn't compel a conclusion that this … that he was persecuted for enumerated grounds. Well, where does it say that? What the BIA says is, first, it doesn't reach the question of credibility, so under our case law, we presume that his testimony is credible. It discusses the various elements of persecution and saying that this mistreatment, in their view, does not rise to the level of persecution. Well, Your Honor, it says … It does talk about the disbandment of the party, but I don't see … perhaps you can point it out to me … where it says anything about economic … he emigrated for economic benefit. Well, what I was focusing on is in the middle of page three of the administrative record, the first full paragraph … Yes, Your Honor. … that although the Respondent's description of his experiences with the Armenian police is disturbing, the Respondent has not described actions so severe and offensive as to warrant a finding of past persecution on account of the Respondent's political opinion. Right. But they're talking about the level of severity of the persecution. I don't see a finding, as I read this, that they're questioning that whatever occurred was on account of. Usually if the BIA has a question about the on account of prong, it merits a separate discussion. Well, as I understand it, these opinions do tend to be brief, but I think that the record does support that. When I looked at the record, it was clear to me that this is an individual who claimed that he decided to immigrate and closed his business, I believe it was March 15th of 1999. This rally with the police didn't take place until a week after. He had already decided to close his business in preparation for emigration. He said he did not subjectively fear persecution until March 20th, but yet he closed the business because he decided to immigrate on March 15th. I don't see how a record like that could possibly compel a finding of persecution on account of enumerated grounds. If the BIA did not say there's negative credibility, and we have to accept his testimony then as credible under our rules, don't we have to accept that as of the date he said he feared persecution, he did because he was beaten. At that point, whatever he had done with his business earlier, don't we have to accept him as credible? Well, even if you do, though, Your Honor, the testimony was I didn't fear persecution until a week after I decided to close my business for purposes of emigration. His own testimony establishes that he decided to leave Armenia because of business problems, not because of any fear of persecution. He said he did not fear any persecution until a week later when he went to this rally, which was broken up by the police, but he was not arrested and he was not harmed. I think you're confusing two lines of analysis in the BIA opinion. The first line of analysis is whether or not there's been past persecution, and that's important because if there is, then we presume there's a well-founded fear. What you're talking about now is his testimony about his subjective testimony and objective indications about the well-founded fear of persecution. What you're focusing on is a past persecution. I don't see any finding in there that there's anything in the past that they question about that has to do with whether or not whatever he experienced was on account of an enumerated ground. In other words, it doesn't seem like the BIA reached or considered or questioned the fact that whatever he suffered was on account of his political beliefs in the past. Is that the way you read it? Well, I know that the IJ questioned that. Yes, but we don't review the IJ's opinion when the BIA substantively reaches a decision. If I could have a moment, Your Honor, just go to the opinion. The only thing I noticed in the BIA's opinion was that one sentence that you've read to us on the second page of their opinion where they say, although what happened was subjectively state, it doesn't establish past persecution on account of the political activities. But they don't give any separate discussion to the on account of. I agree that the opinion could be more thorough. I will consider it. Well, this is more thorough than most. Excuse me, Your Honor. This is more thorough than most. But I think that we also have to look at the record as a whole and ask whether the record as a whole compels the finding of persecution such that any adjudicator, not just that it would support it, but that it would actually compel it and then no reasonable adjudicator and no reasonable court could come to a different conclusion. Well, my problem with the case is if we focus the way our case law does on what happened. I mean, so he has the beating in prison after the demonstration. He spent some time in prison. And then the question, the focus of the BIA opinion is whether or not that rises to the term persecution. So explain to me why you don't think that meets persecution under our case law. Because you seem to be, I think, heading into an area that you don't perhaps need to and which is beside the focus of the BIA opinion. I think your case law supports the conclusion that there's a distinction to be made between isolated incidents such as an isolated beating and the more systemic, regular, repeated beatings, if you will. I think that's even found in Judge White. Excuse me, Your Honor. Can we view three days of beatings as isolated? Well, Your Honor, I think that we have cited to you the case of the book of a case in the First Circuit where it was essentially the same facts. And that court reached the conclusion that this did not compel the finding of persecution. All right. That's a First Circuit case. It is, Your Honor. The problem, I think, in our circuit is that we do have cases where there was one episode of beating and coupled with some other acts of persecution. So you have, I think, the three days of beating probably rises the level of persecution under case law. He's jailed for a month after that without food and water because we accept this case as credible. Excuse me, Your Honor. There was no food and water for the first two days. He said nothing happened to him in prison. I was speaking in shorthand, yes. So you have at least some deprivation of that. You have a month in prison. So far, I think he's got a case of persecution. Then we have this interim period where not much happens to him. Three years, Your Honor. Right. What's the best case you have that that interim period is enough to defeat the fact that he suffered past persecution, at least in that episode? That he did not? That he did. No, I mean, I don't think there's much question under our case law. If you stop it right there, he suffered past persecution on account of his political beliefs. Now, the interim period leaves us, you know, provides us with some pause. My question to you is what case do you have that says that we can use an interim period of undisturbed activity? Yes, Your Honor. On page 18 of my brief, I said the Lata case, the Castillo case, two Ninth Circuit cases, and I would go back to the book of a case in the First Circuit. I realize it's a First Circuit case, but the Elias standard set forth by the Supreme Court asked us to consider whether any fairness, it does allow you to consider what other circuits say. And I think it's similar to the qualified immunity standard, where it has to be clearly established such that if reasonable judges could disagree, then immunity must be respected. I think it's the same idea, that if reasonable judges could disagree on this point, then it isn't compelling. I do think that the three-year period is the most salient issue in this case, the most salient fact. This is someone who is essentially left alone for three years. If we don't give any weight to that factor, then we're not following the case law of the Ninth Circuit. The BIA clearly, I can understand that you might find persecution on this record, but the question is not whether you could, whether you have to, whether there's just no way you couldn't find it. And... Well, let me say the crux of the analysis for me, just speaking as one judge, is this. It seems to me that what happened initially is enough for me so that I would say a reasonable judge shouldn't find, shouldn't not find past persecution occurred. But I don't know yet what is the significance of the three-year period if that rebuts, if three years of calm can rebut the presumption of future, of a reasonable fear coming from the past persecution. I would urge you to read the Blatts and the Castillo cases, Your Honor, and also the Bukovic case on that point. And I believe that it... Okay. The BIA did not abuse its discretion. I would like to make one point about this allegation that other participants were tortured. I think that's a distortion of the record, Your Honor. And I'd like you to cite to two pages of the administrative record, page 104, which is Mr. Dobbs's direct testimony, and page 231, which is his asylum application. In both cases, what he says is he was afraid that the police would torture, would He doesn't say that it actually happened. He says that he thought it might happen. Well, he says some members of our organization were arrested, right? He does say that. But this idea that they were tortured, this is actually speculation on his part. And to the extent that he heard it from somewhere, it's not in the record. But the GU case, which we cited in our 20AJ letter, stands for the proposition that the BIA is not required to accept some sort of unfounded hearsay account of which the Petitioner has no knowledge. Well, what about his account of Mr. Havasian being killed? Well, Your Honor, that was by some other group, supposedly. He was just a regular member of this group. I don't know that we can bunch together different types of incidents by different groups. I don't know that the case law supports that. The testimony was that the political party disbanded in 1999. That was seven years ago. This idea that because the police supposedly were checking on his whereabouts, there are many cases that we cited that that doesn't give rise to a level of fear of future persecution. I wouldn't cite the GU case again. I would cite the Bukova case. We said that there's an absence of threats in the record made by the police during these visits. Mr. Estrada said that that isn't required in this circuit. But the cases that he cites in his reply brief on this point all involve threats that were made by the police when they actually visited the person's home. So I do think that that is another factor that militates against any finding that the BIA abused its discretion. Once again, I do understand that there are points in this record that could in isolation support a finding of persecution. But, again, this case turns on the standard of review. The standard of review is whether it's compelling such that any reasonable judge and any reasonable adjudicator would find persecution. I ask that you read the record carefully and as a whole rather than focus on an isolated beating three years before this gentleman decided to emigrate. Thank you. Let me ask you a legal question. I have a follow-up question for you. And I realize your time's up. But if you could answer this, I'd appreciate it. Assuming that we determined that the three days of beatings was sufficient to show past persecution, but we have a question about the significance of the quiet three years afterwards, or relatively quiet three years. Is that an issue that has to be remanded? As I read the BIA's opinion, it did not address whether three years of relative calm a presumption from past persecution. They just thought there wasn't past persecution. So would that issue have to be remanded if we resolve the first issue adverse to the government? Well, Your Honor, with all respect, I do think that the BIA addressed that precise issue in the second page. And where did they address it? In the second page. On which page? Page three of the administrative record. I'm looking at that right now. They say, furthermore, we find the respondent hasn't established a well-founded fear of future persecution. But that was on the premise that there was no past persecution. Well, Your Honor, what they said is that nothing happened to Mr. Davitian after he was released from prison. He was taking care of his business. And then they cite the Lim case and the Aruta case for the proposition that periods of calm after an alleged beating do not. With respect, Counselor, don't say that. I mean, the problem is that you're you have a different argument than the BIA relied on. It doesn't say in the BIA opinion that we are there was past persecution, but the three-year period trumps that. It's just silent on that. There is a tag sentence that you talk about saying nothing happened to him as he was taking care of business. And then they cite the Lim and the Aruta case for the precise proposition that I'm citing there. Right. But it doesn't tell you anywhere about three years, right? It just says he lives undisturbed. You might be able to stretch it, but I think you're not answering Judge Gould's question. Judge Gould's question is, and we will look at it carefully. Don't worry about that. But the Judge Gould's question is, if we find past persecution and if we conclude that the BIA hasn't addressed it, does, is, in your judgment, remand required or not? You mean as opposed to you making that decision here? Yes. Well, I think that they avoided certain, the credibility issue, for example, so I think that in that event it would be appropriate to remand. But I don't, I think it's there. I mean, obviously, they could have been more thorough. They didn't, it's a two and a half page decision and it doesn't cover all the things that we've talked about today. They don't get into every issue. But I think, I think it's broad enough that you could read it. Okay. Thank you, counsel.  I'm going to put three minutes on. Your Honor, I just want to address a few of the points raised. First, the interim period. The record does not support characterizing that interim period as a safe period. First of all, there, Mr. Dockton was being harassed during that period. Second of all, in 1999, he was threatened with arrest. And after that period, after he fled the country, there was a continued interest in his whereabouts. This court has stated, in the Lim case, that a post-threat harmless period, I'm quoting here, need not vanquish an asylum claim, particularly where significant evidence suggests that the threats are becoming more menacing. Here, the threats were indeed becoming more menacing because authorities attempted to arrest Mr. Dockton for a second time. Therefore, this independently demonstrates a well-founded fear of future persecution. I also want to address the point about the assassination of Dr. Hovhannisyan. Counsel has suggested that this was not done by the Armenian government. However, under the law of the circuit, if an act of persecution is committed by a group that the government is unable or unwilling to control, it can be attributed to the government. The record shows that the Fidein group was a group associated with the President of Armenia. At AR-97 of the record, Mr. Davitian states that the Fidein were associated with Robert Kocharian. Then at AR-231 of the record, the State Department states that Robert Kocharian was the President of Armenia. The third point I want to address is the Gu opinion. I want to note first that the mandate has not issued on Gu, and it appears that en banc proceedings may be going on with Gu. Second of all, the facts in Gu are entirely an apposite. Gu involved an episode that lasted for maybe a few hours. Then the petitioner had no further contacts with the police, and police in fact exhibited no continuing interest in the petitioner. Furthermore, the Gu opinion's statement on hearsay evidence contravenes this circuit's law in Cordon Garcia, which I cited in the reply brief. And finally, I want to make clear that the BIA never addressed this hearsay point, and therefore, their decision cannot be affirmed on that basis. If the Court has no further questions. Thank you, Mr. Stroud. And I know you're taking the case pro bono, and we deeply appreciate the time you put into it and the time that your firm has. So thank you. Thank you, Your Honor. Thank you both for your presentations. The case just heard will be submitted. Mr. Pincus, I know that you're doing this as a favor for the Department of Justice, too, so my thanks to you. Thank you. We'll proceed to the next case on the oral argument calendar, which is Orofin v. America v. Bia.
judges: Thomas, Gould, Schwarzer